**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHERMANITA MCCANTS,

Plaintiff,

v. Case No.: 3:16-cv-435-J-34PDB

ENHANCED RECOVERY
COMPANY, LLC,
A Foreign Limited Liability Company,

Defendant.
________________________________________/

**DEFENDANT'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**

Defendant Enhanced Recovery Company, LLC ("Defendant" or "ERC"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby files this Motion for Summary Judgment seeking dismissal of Plaintiff Shermanita McCants's ("Plaintiff") Complaint, alleging Defendant failed to pay Plaintiff overtime wages in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (the "FLSA"), because there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. In support, Defendant states as follows:

## I. INTRODUCTION

On April 13, 2016, Plaintiff filed a one count Complaint alleging that Defendant failed to pay overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C.

§ 207 ("FLSA").[1] Plaintiff alleges that she received straight pay, as opposed to time-and-one-half, for all hours worked over 40 hours each week.[2]

## II. STATEMENT OF UNDISPUTED FACTS

ERC is a nationally licensed third-party debt collections company.[3] Plaintiff was hired as a collector on or about September 12, 2008.[4] Plaintiff remained a collector, primarily responsible for collecting outstanding, third-party debts, throughout her employment with ERC.[5] At the start of her employment with ERC, Plaintiff received ERC's Employee Handbook and acknowledged her receipt and understanding.[6] ERC's Employee Handbook contained policies including payroll and timekeeping policies.[7] For example, "[a]ll non-exempt employees [were] required to utilize the time system" to accurately enter their time and were prohibited from working off the clock.[8] The Employee Handbook also advised employees regarding its semi-monthly pay period, that employees would be paid on the 10th and 25th of each month, and that the workweek began Saturday and ended Friday.[9] In or around January 2015, ERC revised the Employee Handbook and it was made available to all ERC employees, including Plaintiff, via ERC's intranet site.[10] Plaintiff could access ERC's intranet and the Employee Handbook from her work computer.[11] Despite the

---

[1] *See* Dkt. No. 1.
[2] *See* Dkt. No. 11
[3] Affidavit of Kim Howell ("Howell Aff.") ¶ 1. The affidavit, deposition transcript, and other documents cited herein are attached to Defendant's Appendix in Support of this Motion.
[4] Dep. Tr. of Shermanita McCants ("McCants") 15:16-17, 26:18-27:1 (Exh. 3).
[5] McCants Dep. 15:18-16:5; 17:1-18:19.
[6] Howell Aff. ¶ 6 (Exh. A-B); *see also* McCants Dep. 41:15-42:7 (Exh. 4), 43:17-45:15 (Exh. 5).
[7] Howell Aff. ¶¶ 7-9 (Exh. A).
[8] Howell Aff. ¶ 7 (Exh. A, 4-5).
[9] Howell Aff. ¶ 8 (Exh. A, 5).
[10] Howell Aff. ¶ 10 (Exh. C).
[11] Howell Aff. ¶ 10.

revision, all of the policies discussed above and relevant to Plaintiff's claims remained constant.[12]

As a collector, Plaintiff's schedule fluctuated considerably depending on business needs.[13] Plaintiff's regular schedule was Monday through Friday; working from 8:00 a.m. to 5:00 p.m. for three work days and from 12:00 p.m. to 9:00 p.m. for the remaining two days.[14] Plaintiff was also expected to work four hours every other Saturday.[15] Plaintiff testified that she regularly worked every other Saturday and that there were occasions where she worked seven days in a week.[16] On December 18, 2015, Plaintiff was terminated for "Legal or Regulatory Violations."[17] Prior to her termination, ERC has no record that Plaintiff ever complained about her pay or any alleged failure to receive overtime compensation despite ERC's policy that requires employees who believe they "have not been paid for all hours worked, or that [their] pay is inaccurate for any reason, must promptly notify, in writing, [their] immediate supervisor or a member of the Human Resources Department."[18]

Pursuant to the maximum, three-year statute of limitations that governs Plaintiff's claim, the relevant time period for this case is from April 13, 2013 through December 18, 2015.[19] *See* 29 U.S.C.A. § 255.

---

[12] *See* Howell Aff. ¶¶ 11-12 (Exh. C-D).
[13] McCants Dep. 25:23-26:20 (Exh. 3), 30:24-31:15.
[14] McCants Dep. 25:25-26:17.
[15] McCants Dep. 35:25-36:18.
[16] McCants Dep. 31:20-32:5, 35:25-36:12.
[17] McCants Dep. 135:2-136:1, 138:5-18, 138:22-146:14 (Exh. 13 & 14); *see also* McCants Dep. 134:24-135:1 (Plaintiff refused to sign the termination document because she disagreed with the basis for termination).
[18] Howell Aff. ¶¶ 14-15 (Exh. E); *see also* Howell Aff. ¶ 13 (C, 7).
[19] *See* Dkt. No. 1 (Plaintiff filed her complaint on April 13, 2016); McCants Dep. 139:18-20 (Exh. 14) (Plaintiff's employment was terminated December 18, 2015); for purposes of summary judgment only, Defendant with assume a three-year statute of limitations applies.

## A. ERC'S TIME SYSTEM

Throughout her employment, Plaintiff was paid on an hourly basis.[20] As such, Plaintiff was required to utilize ERC's time system to clock in and out.[21] Plaintiff does not allege that she worked off the clock.[22] In fact, Plaintiff testified that she never worked off the clock.[23]

Plaintiff testified that during the relevant time period, she used ADP software to clock in and out from her work computer.[24] If ADP was not functioning, Plaintiff testified that she would inform her manager who would ensure that her time was properly recorded.[25] Plaintiff testified that, other than the time records produced by ERC, she does not have any record of hours worked.[26]

Plaintiff testified that she did not trust that her managers accurately entered and/or updated her time records, but was unable to provide any specifics or evidence demonstrating that her managers did not accurately record Plaintiff's time.[27] While Plaintiff testified that

[20] McCants Dep. 28: 24-29:9; *see also* Howell Aff. ¶ 5.
[21] McCants Dep. 71:12-72:4 (Exh. 5 & 6), 102:18-103:8 (Exh. 10); *see* Howell Aff. ¶ 7 (Exh. A), ¶ 11 (Exh. C).
[22] *See* Dkt. No. 1 & 11; McCants Dep. 244:3-22 (Plaintiff alleges that she was paid straight time for hours that should have been paid at her applicable overtime rate), 260:18-261:19 (Exh. 29, 7) ("Paystubs reflect excess of 40 hours worked in a single week at regular pay."); *see also* McCants Dep. (Exh. 29, 10) (Plaintiff's calculation of damages supports this theory), 265:19-273:6 (Plaintiff was unable to testify as to how her damages were calculated, but testified that her supplemental response to Interrogatory No. 2 correctly stated the hours and amount she claims is unpaid).
[23] McCants Dep. 60:2-12.
[24] McCants Dep. 71:12-72:4, 72:13-73:2.
[25] McCants Dep. 72:5-12, 73:23-74:15 (Plaintiff testified that if she discovered ADP was down, she would immediately report the issue to her manager to ensure that her time worked was properly accounted for), 109:6-12 (Plaintiff testified that these communications were verbal and not documented).
[26] McCants Dep. 106:9-109:5.
[27] McCants Dep. 74:16-78:10, 103:9-104:5 ("when it comes to my time, I don't trust anybody but me to make sure that there's an accurate recording of it, that it's done properly."), 169:6-25 (Plaintiff acknowledged that she does not have evidence to support her belief that ERC's time records are inaccurate), 262:5-264:15 (Plaintiff claims, without any supporting evidence, that her time was not accurately recorded because she was not able to clock herself in and out at various times and she had to rely on managers when ADP was not functioning properly).

she repeatedly spoke with managers regarding her pay, she did not reach out to ERC's Payroll or Human Resources Department.[28]

**B. ERC'S PAY PERIODS**

At all relevant times, ERC utilized semi-monthly pay periods for all its employees.[29] Employees are paid on the 10th of the month, unless it falls on a weekend or holiday, for work performed from the 16th of the month through the end of the month.[30] Employees are paid on the 25th of the month, unless it falls on a weekend or holiday, for work performed from the 1st of the month through the 15th of the month.[31] For the purpose of calculating overtime, ERC's workweek begins on Saturday and ends on the following Friday.[32] Each Friday morning, team supervisors are provided a report identifying the total hours worked by each collector.[33] If overtime is not approved for the collectors on their team, team supervisors send collectors home early on Friday to avoid incurring unauthorized overtime.[34] This is referred to as "comp" time."[35]

As a result of ERC's semi-monthly pay periods, it is not uncommon for a pay period to include two full workweeks and part of a third.[36] Consequently, an employee's pay may

---

[28] McCants Dep. 113:2-19; *see, e.g.,* McCants Dep. 153:1-158:1.
[29] McCants Dep. 68:24-69:9, 152:19-25; *see also* Howell Aff. ¶ 8 (Exh. A), ¶ 11 (Exh. C).
[30] Howell Aff. ¶ 8 (Exh. A), ¶ 11 (Exh. C); *see also* McCants Dep. 152:19-25, 158:8-159:4, 170:22-171:2.
[31] Howell Aff. ¶ 8 (Exh. A), ¶ 11 (Exh. C); *see also* McCants Dep. 152:19-25, 170:1-21.
[32] Howell Aff. ¶ 8 (Exh. A), ¶ 12 (Exh. D); *see also* McCants Dep. 68:14-23, 79:12-23, 160:21-163:16 (Plaintiff testified that she was unaware of when the workweek began or ended for the purposes of payroll); *see* 29 C.F.R. 778.105 (determining workweek).
[33] Howell Aff. ¶¶ 9 (Exh. A, 4-5), 12 (Exh. D).
[34] Howell Aff. ¶¶ 9 (Exh. A, 4-5), 12 (Exh. D).
[35] Howell Aff. ¶¶ 9 (Exh. A, 4-5), 12 (Exh. D). Plaintiff's first manager, Donyac Baylor, allegedly explained ERC's compensation time policy to Plaintiff by stating that, instead of paying overtime to collectors that worked a weekend shift and reached forty hours of work, collectors would receive time off. *See* McCants Dep. 52:20-56:5 (Exh. 5, 5-6), (Exh. 29); *but see* McCants Dep. 40:19-41:6 (However, Plaintiff was also able to testify accurately regarding the application of the "comp" time policy). Plaintiff misunderstood Baylor's statement to mean that ERC has a policy of not paying overtime worked, which is not the case.
[36] *See, e.g.,* McCants Dep. 171:3-172:22.

accurately reflect that the employee worked in excess of 80 straight time hours without earning overtime. For example, from April 16, 2013 through April 30, 2013, Plaintiff worked and was paid 84.23 straight time hours, but she performed that work across three workweeks.[37] Despite working more than 80 hours, Plaintiff did not work more than 40 hours in any one workweek, and, therefore, did not earn overtime compensation.[38] The following table illustrates this point:

| **Pay Period: April 16, 2013-April 30, 2013**[39] | | | |
|---|---|---|---|
| **Workweek** | **Date** | **Hours Worked (excluding holiday/PTO/sick)** | **Total Hours Worked in Workweek** |
| Week No. 1 April 13-19, 2013 | Sat., April 13, 2013 | 0.00 | 0.00 |
| Week No. 1 April 13-19, 2013 | Sun., April 14, 2013 | 0.00 | 0.00 |
| Week No. 1 April 13-19, 2013 | Mon., April 15, 2013 | 8.00 | 8.00 |
| Week No. 1 April 13-19, 2013 | Tues., April 16, 2013 | 8.07 | 16.07 |
| Week No. 1 April 13-19, 2013 | Wed., April 17, 2013 | 8.11 | 24.18 |
| Week No. 1 April 13-19, 2013 | Thur., April 18, 2013 | 8.03 | 32.21 |
| Week No. 1 April 13-19, 2013 | Fri., April 19, 2013 | 4.25[40] | **36.46** |
| Week No. 2 April 20-26, 2013 | Sat., April 20, 2013 | 1.35 | 1.35 |
| Week No. 2 April 20-26, 2013 | Sun., April 21, 2013 | 2.52 | 3.87 |
| Week No. 2 April 20-26, 2013 | Mon., April 22, 2013 | 7.85 | 11.72 |

[37] *See* McCants Dep. (Exh. 16, 4-5; Exh. 17, 1-3). Plaintiff's time records track the times when she was clocked out for rest periods; however, Plaintiff was paid for these rest breaks. *See* 29 C.F.R. 778.18; *see, e.g.,* McCants Dep (Exh. 17, 2) (Plaintiff took two 15 minute breaks on April 16, 2013 from 4:55 p.m. to 5:10 p.m. and from 7:04 p.m. to 7:22 p.m.; however, the hours column reflects that she received credit for this time (4:06 p.m. to 9:05 p.m., Plaintiff received a total of 5.99 hours).

[38] *See* McCants Dep. (Exh. 17, 1-3).

[39] *See* McCants Dep. (Exh. 16, 4-5; Exh. 17, 1-3).

[40] Plaintiff also received four hours of vacation on April 19, 2013 that is not included in the hours worked.

| | | | |
|---|---|---|---|
| Week No. 2 April 20-26, 2013 | Tues., April 23, 2013 | 7.91 | 19.63 |
| Week No. 2 April 20-26, 2013 | Wed., April 24, 2013 | 8.02 | 27.65 |
| Week No. 2 April 20-26, 2013 | Thur., April 25, 2013 | 8.11 | 35.76 |
| Week No. 2 April 20-26, 2013 | Fri., April 26, 2013 | 4.08 | **39.84** |
| Week No. 3 April 27, 2013 – May 3, 2013 | Sat., April 27, 2013 | 0.00 | 0.00 |
| Week No. 3 April 27, 2013 – May 3, 2013 | Sun., April 28, 2013 | 0.00 | 0.00 |
| Week No. 3 April 27, 2013 – May 3, 2013 | Mon., April 29, 2013 | 7.73 | 7.73 |
| Week No. 3 April 27, 2013 – May 3, 2013 | Tues., April 30, 2013 | 8.24 | 15.97 |
| Week No. 3 April 27, 2013 – May 3, 2013 | Wed., May 1, 2013 | 6.89 | 22.86 |
| Week No. 3 April 27, 2013 – May 3, 2013 | Thur., May 2, 2013 | 8.56 | 31.42 |
| Week No. 3 April 27, 2013 – May 3, 2013 | Fri., May 3, 2013 | 8.03 | **39.45** |

The above table also demonstrates the application of the "comp" time policy. On Friday, April 26, 2013, Plaintiff was sent home after working four hours to avoid incurring unauthorized overtime.[41]

As second example, from April 16, 2015 through April 30, 2015, Plaintiff worked 94.41 hours across three workweeks and earned 10.38 hours of overtime pay.[42] The table below illustrates how Plaintiff earned overtime in ERC's semi-monthly pay period system:

[41] *See* McCants Dep. (Exh. 16, 4-5); *see also* Howell Aff. ¶¶ 9 (Exh. A, 4-5), 12 (Exh. D).

| Pay Period: April 16, 2015-April 30, 2015[43] | | | |
|---|---|---|---|
| **Workweek** | **Date** | **Hours Worked (excluding holiday/PTO/sick)** | **Total Hours Worked in Workweek** |
| Week No. 1 April 11-17, 2015 | Sat., April 11, 2015 | 5.90 | 5.90 |
| Week No. 1 April 11-17, 2015 | Sun., April 12, 2015 | 0.00 | 5.90 |
| Week No. 1 April 11-17, 2015 | Mon., April 13, 2015 | 8.43 | 14.33 |
| Week No. 1 April 11-17, 2015 | Tues., April 14, 2015 | 7.74 | 22.07 |
| Week No. 1 April 11-17, 2015 | Wed., April 15, 2015 | 9.82 | 31.89 |
| Week No. 1 April 11-17, 2015 | Thur., April 16, 2015 | 11.17 | 43.06 |
| Week No. 1 April 11-17, 2015 | Fri., April 17, 2015 | 7.32 | **50.38** |
| Week No. 2 April 18-24, 2015 | Sat., April 18, 2015 | 5.23 | 5.23 |
| Week No. 2 April 18-24, 2015 | Sun., April 19, 2015 | 0.00 | 5.23 |
| Week No. 2 April 18-24, 2015 | Mon., April 20, 2015 | 7.93 | 13.16 |
| Week No. 2 April 18-24, 2015 | Tues., April 21, 2015 | 6.30 | 19.46 |
| Week No. 2 April 18-24, 2015 | Wed., April 22, 2015 | 6.43 | 25.89 |
| Week No. 2 April 18-24, 2015 | Thur., April 23, 2015 | 7.10 | 32.99 |
| Week No. 2 April 18-24, 2015 | Fri., April 24, 2015 | 6.81 | **39.80** |
| Week No. 3 April 25, 2015 – May 1, 2015 | Sat., April 25, 2015 | 4.08 | 4.08 |
| Week No. 3 April 25, 2015 – May 1, 2015 | Sun., April 26, 2015 | 0.00 | 4.08 |
| Week No. 3 | Mon., April 27, 2015 | 6.25 | 10.33 |

[42] *See* McCants Dep. (Exh. 16, 113-114; Exh. 17, 45-46); 29 C.F.R. 778.106 (overtime earned in a particular workweek must be paid on the regular payday for the period in which such workweek ends).
[43] *See* McCants Dep. (Exh. 16, 113-114; Exh. 17, 45-46).

| | | | |
|---|---|---|---|
| April 25, 2015 – May 1, 2015 | | | |
| Week No. 3 April 25, 2015 – May 1, 2015 | Tues., April 28, 2015 | 6.61 | 16.94 |
| Week No. 3 April 25, 2015 – May 1, 2015 | Wed., April 29, 2015 | 10.02 | 26.96 |
| Week No. 3 April 25, 2015 – May 1, 2015 | Thur., April 30, 2015 | 9.15 | 36.11 |
| Week No. 3 April 25, 2015 – May 1, 2015 | Fri., May 1, 2015 | 3.88 | **39.99** |

The forgoing shows Plaintiff earned, and was paid for, 10.38 hours of overtime for Week No. 1 but did not work any overtime hours in Week No. 2 or 3.[44] The above table also shows another example of "comp" time. On Friday, May 1, 2015, Plaintiff was sent home after working approximately four hours to avoid incurring unauthorized overtime.[45]

## C. PLAINTIFF'S TIME AND PAY RECORDS

During the time relevant to this litigation, Plaintiff received several pay increases resulting in four different rates of pay that are relevant to her claim. From April 13, 2013 through August 31, 2013, Plaintiff's regular rate was $13.46 per hour.[46] From September 1, 2013 through August 31, 2014, Plaintiff's regular rate was $13.90 per hour.[47] From September 1, 2014 through September 14, 2015, Plaintiff's regular was $14.39 per hour.[48] From September 15, 2015 through December 18, 2015, Plaintiff's regular was $14.78 per

[44] *See* 29 C.F.R. 778.104 (each workweek stands alone to determine overtime compensation); McCants Dep. (Exh. 16, 113-114).
[45] *See* McCants Dep. (Exh. 16, 113-114); *see also* Howell Aff. ¶¶ 9 (Exh. A, 4-5), 12 (Exh. D).
[46] McCants Dep. 147:4-148:12 (Exh. 15).
[47] McCants Dep. 148:13-24 (Exh. 15).
[48] McCants Dep. 148:25-149:4 (Exh. 15).

hour.[49] While these rates were not included on Plaintiff's Earning Statements, the fact that Plaintiff received pay at these rates is easily verifiable from the records.[50]

Further, despite her allegations that she was paid straight time for hours worked in excess of forty, Plaintiff admitted that she did receive overtime compensation during her employment with ERC.[51] As with the regular rate of pay above, Plaintiff received overtime pay at the proper rate, one-and-one-half her regular rate, which is verifiable from the records.[52]

During her deposition, Plaintiff reviewed her time records and testified that she "believe[s] that there are some inaccuracies," but provided no evidence to support this belief.[53] After reviewing her Earnings Statements, Plaintiff testified that the Earning Statements could be incorrect; however, Plaintiff testified that she could not identify which statements were inaccurate and has no evidence to support such a belief.[54] When pressed for detail, Plaintiff testified that any of the time records and/or Earnings Statements "could be off," and that she is "pretty sure a lot of [her] pay was off."[55] Plaintiff elaborated by testifying that she felt underwhelmed by the manager response to her concern about not

---

[49] McCants Dep. 149:5-13 (Exh. 15).

[50] For example, for the March 16-31, 2014 pay period, Plaintiff was paid for 88.42 regular hours for a total gross pay $1,229.04, equating to $13.90 per hour. *See* McCants Dep. (Exh. 16, 53-54). Similarly, for the September 16-30, 2015 pay period, Plaintiff was paid for 87.80 regular hours for a total gross pay $1,297.68, equating to $14.79 per hour. *See* McCants Dep. (Exh. 16, 134-135). *See also* McCants Dep. 229:8-232:13 (Exh. 22-24, 31, & 32) (Plaintiff produced pay stubs that include her relevant rate).

[51] McCants Dep. 53:22-54:13. Confusingly, Plaintiff repeatedly testified about ERC's alleged policy of never paying overtime despite the fact that she admits to receiving overtime wages. *See* McCants Dep. 250:13-252:2 (Exh. 26).

[52] For example, for the April 16-30, 2015 pay period discussed above, Plaintiff's 10.38 hours of overtime pay were paid at a rate of $21.585 ($14.39 • 1.5 = $21.585). *See* McCants Dep. (Exh. 16, 113-114). Also, throughout Plaintiff's employment, Plaintiff occasionally received various discretionary bonus payments that are not at issue in this case. *See* 29 C.F.R. 778.200, 778.208 (exclusion from regular rate).

[53] McCants Dep. 175:18-176:6 (Exh. 17).

[54] McCants Dep. 152:9-18 (Exh. 16).

[55] McCants Dep. 219:5-19.

getting paid for all the hours work and she testified, "I just know that – I know, I know. I worked lots and lots and lots and lots of hours. I really feel that if I were really compensated for all the time I worked, I'd be rich."[56]

Finally, Plaintiff was questioned about her claim for damages as identified in her supplemental response to Interrogatory No. 2 of Defendant's First Set of Interrogatories.[57] Therein, Plaintiff claimed, *inter alia*, that she is owed overtime premiums for 9.35 hours worked during the pay period from May 1, 2013 through May 15, 2013.[58] However, Plaintiff was unable to explain how she determined that she worked 9.35 hours of overtime during this pay period.[59] Plaintiff testified that she was also unable to explain how she determined any of the alleged overtime hours worked in her supplemental response to Interrogatory No. 2.[60] Then, Plaintiff was shown the corresponding earning statement for the pay period ending May 15, 2013, which indicated that Plaintiff worked and was paid for 85.90 hours of regular time.[61] Plaintiff reaffirmed her claim that 9.35 hours of the 85.90 hours should have been paid at an overtime rate, but was unable to provide evidence supporting her claim.[62]

A review of Plaintiffs time and pay records show that Plaintiff was properly paid for all overtime worked, and Plaintiff has failed to produce evidence to the contrary.

---

[56] McCants Dep. 219:20-220:18.
[57] McCants Dep. 273:9-274:1.
[58] McCants Dep. 273:9-274:14 (Exh. 30).
[59] McCants Dep. 265:21-268:16, 269:21-24 (When questioned about how she calculated 9.35, Plaintiff testified "I had help" from counsel and that she trusted the calculations provided by her counsel).
[60] McCants Dep. 268:6-8.
[61] McCants Dep. 273:9-20 (Exh. 31). During the deposition, Plaintiff also reviewed the Earning Statements for each pay period that she alleges that she worked overtime but received only straight time pay. *See* McCants Dep. 275:14-277:24 (Exh. 32).
[62] McCants Dep. 274:2-21.

## III. MEMORANDUM OF LAW

Summary judgment is appropriate where the moving party demonstrates "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). "[T]he burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence" that are "significantly probative of a disputed fact" and more than "merely colorable[.]" *Hamilton v. Sheridan Healthcorp Inc.*, 602 F. App'x 485, 487 (11th Cir. 2015) (internal citation omitted). In fact, "[c]onclusory affidavits or unsupported allegations are not sufficient to create a triable issue of fact[.]" *Uche v. St. Luke's-St. Vincent's Healthcare, Inc.*, No. 3:12-cv-865-J-32JBT, 2015 WL 476178, at *7 (M.D. Fla. Feb. 5, 2015) (citing *Carter*, 731 F.3d at 1167 (11th Cir. 2013)).

### A. Plaintiff Fails to Set Forth a *Prima Facie* Case of Failure to Pay Overtime Compensation, Entitling ERC to Summary Judgment

Under § 207 of the FLSA, "an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." 29 U.S.C.A. § 207(a)(1). ERC acknowledges that Plaintiff was employed as a non-exempt employee, entitled to overtime compensation, throughout her employment. Under the FLSA, "[a]n unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (internal quotations and citations omitted).

At summary judgment, it is not enough for an employee to vaguely declare, without more, that she is owed unpaid wages. "A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a *genuine* issue of material fact will preclude grant of summary judgment. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (emphasis added) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986)). In an unpaid overtime wages claim, to render a factual dispute genuine, an employee's initial burden is to "[(1)] produce sufficient evidence [s]he has in fact performed work for which [s]he was improperly compensated and . . . produce[] sufficient evidence to [(2)] show the amount and extent of that work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1316.

Here, Plaintiff has failed to meet her initial burden of proof because she failed to put forth sufficient evidence of the amount and extent of her work in excess of forty hours a week for any weeks she worked for ERC during the relevant time period. Plaintiff has, instead, put forth contradictory and bare assertions of her overtime hours worked, and allegedly unpaid overtime premium.

As a non-exempt employee, Plaintiff was required to utilize ERC's time system, ADP, to clock in and out.[63] Plaintiff testified that she did, in fact, use ADP to clock in and out each workday; and, if ADP was not functioning, Plaintiff testified that she would inform

[63] McCants Dep. 71:12-72:4 (Exh. 5 & 6), 102:18-103:8 (Exh. 10); *see* Howell Aff. ¶ 7 (Exh. A), ¶ 11 (Exh. C).

her manager who would ensure that her time was properly recorded.[64] Plaintiff specifically testified that she never worked off the clock.[65]

As an initial matter, Plaintiff's contention that ERC does not pay overtime, but "comp" time at its discretion[66] is premised upon a basic misunderstanding of ERC's "comp" time policy.[67] As discussed above, "comp" time is a tool used to avoid incurring unauthorized overtime, by sending collectors home early on Fridays.[68] Plaintiff's testimony and the documentary evidence agree that, in these instances, Plaintiff was relieved of duty and sent home, not required to work overtime hours at her straight time rate.[69]

Next, during the relevant time period, Plaintiff worked 128.01 hours of overtime and was paid $2,748.33 in overtime wages.[70] However, Plaintiff claims that she was paid straight time, without an overtime premium, for 121 hours that she alleges should have been classified as overtime hours.[71] Plaintiff cannot explain how she calculated 121 hours and has no evidence supporting her claim that these hours were incorrectly paid at her regular rate of

[64] McCants Dep. 72:5-12, 73:23-74:15 (Plaintiff testified that if she discovered ADP was down, she would immediately report the issue to her manager to ensure that her time worked was properly accounted for), 109:6-12 (Plaintiff testified that these communications were verbal and not documented).
[65] McCants Dep. 60:2-12.
[66] *See* Dkt. No. 11 ("[Plaintiff's first manager] told [Plaintiff] that ERC doesn't pay overtime instead they will give comp time at their discretion."); *see also* McCants Dep. (Exh. 29). Plaintiff's conception of when she was entitled to overtime is also flawed, in part because Plaintiff was not aware of the workweek as it was defined for payroll purposes. *See* Dkt. No. 11 ("after receiving my paycheck and realizing that the overtime for the *weekend* was listed as straight hourly pay." Plaintiff was not entitled overtime wages simply for working on the weekend, and, in light of the fact that the workweek began on Saturday, it would be virtually impossible for Plaintiff to earn overtime on Saturday or Sunday.) (emphasis added)
[67] McCants Dep. 52:20-56:5 (Exh. 5, 5-6), (Exh. 29).
[68] Howell Aff. ¶¶ 9 (Exh. A, 4-5), 12 (Exh. D).
[69] McCants Dep. 40:19-41:6 (Plaintiff testified that the manager would tell her to go home). On Friday, April 26, 2013 (discussed in table one in Section II.B., above), Plaintiff was sent home at 12:00 p.m. after 4.08 hours of work. (Exh. 17, 2). Plaintiffs last call on that date ended at 11:56:53. McCants Dep. 208:12-213:13 (Exh. 18, 33-34).
[70] *See* Dkt. No. 12; *see also* McCants Dep. (Exh. 16-17).
[71] McCants Dep. (Exh. 30).

pay.[72] In fact, Plaintiff's entire claim rests on her belief that she worked a lot of hours and that she should have been paid more.[73] Plaintiff also failed to check her alleged hours worked against Defendant's pay and time records.[74] Plaintiff's belief, regardless of how sincere it may be, is insufficient to prove that she worked overtime without compensation.

At the very least, Plaintiff must provide evidence supporting her allegation that she performed overtime work without proper compensation. *See, e.g.*, *Maldonado v. Alta Healthcare Grp., Inc.*, 17 F. Supp. 3d 1181, 1193 (M.D. Fla. 2014) (holding employee met summary judgment burden on FLSA overtime claim because employee provided "documentation from the Resident Observation Logs," which were "records maintained by Defendants in the ordinary course of business," "showing work that she performed during night shifts"). Plaintiff was completely unable to testify as to how she determined the amount of overtime wages owed despite having: (i) Defendant's Verified Summary of Hours,[75] (ii) Plaintiff's time records,[76] (iii) Plaintiff's pay records,[77] (iv) Plaintiff's badge swipe records,[78] and (v) Plaintiff's call logs.[79] As such, Plaintiff's claim for overtime premium pay for 121 hours must fail as it amounts to nothing more than an unsupported allegation. *Allen*, 495 F.3d at 1316.

Alternatively, Plaintiff must offer evidence that "[ERC]'s records cannot be trusted." *Allen*, 495 F.3d at 1316 (finding summary judgment for the employer improper where: (i)

[72] McCants Dep. 273:9-20 (Exh. 31), 275:14-277:24 (Exh. 32).
[73] McCants Dep. 219:20-220:18.
[74] McCants Dep. 218:20-220:12.
[75] *See* Dkt. No. 12.
[76] *See* McCants Dep. (Exh. 17).
[77] *See* McCants Dep. (Exh. 16, 31, & 32).
[78] *See* McCants Dep. (Exh. 18).
[79] *See* McCants Dep. (Exh. 19).

testimony that some employees would not record overtime because the employer would not pay them for it, (ii) testimony that some employees were forced to amend their time sheets to show no more than forty fours worked, (iii) testimony that employees' time sheets "were torn up if they reflected overtime work," and (iv) testimony that an individual in charge of time sheets would white out overtime hours). Plaintiff's sole contention in this regard is that when ADP was not functioning, she would inform her manager who would input her time, but she did not trust that her managers accurately entered and/or updated her time records.[80] However, other than her gut feeling, Plaintiff has not provided any supporting evidence. Consequently, the Court cannot conclude that a genuine dispute as to the trustworthiness of these documents exists. *See Gilson v. Indaglo, Inc.*, 581 F. App'x 832, 833 (11th Cir. 2014) (relying on employees' failure "to produce documentary evidence or state with specificity particular dates on which their actual work hours were not accurately reflected in the employer's records" in affirming the district court's grant of the employer's motion for judgment as a matter of law). Therefore, Plaintiff fails to make the requisite showing.

### B. The Undisputed Evidence Demonstrates that Plaintiff was Properly Paid Overtime Compensation

Assuming, *arguendo*, that this Court finds that Plaintiff has carried her burden that she "in fact performed work for which [s]he was improperly compensated and […] produce[d] sufficient evidence to show the amount and extent of that work as a matter of just

[80] McCants Dep. 72:5-12, 73:23-78:10 (Plaintiff testified that if she discovered ADP was down, she would immediately report the issue to her manager to ensure that her time worked was properly accounted for), 103:9-104:5 ("when it comes to my time, I don't trust anybody but me to make sure that there's an accurate recording of it, that it's done properly."), 169:6-25 (Plaintiff acknowledged that she does not have evidence to support her belief that ERC's time records are inaccurate), 262:5-264:15 (Plaintiff claims, without any supporting evidence, that her time was not accurately recorded because she was not able to clock herself in and out at various times and she had to rely on managers when ADP was not functioning properly).

and reasonable inference," the burden shifts to ERC to must bring forth either (1) evidence of the precise amount of work performed or (2) evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.[81] *Allen*, 495 F.3d at 1315-1316 (citing *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-688 (1946).

The incontrovertible evidence shows that Plaintiff was properly paid for all overtime worked. ERC produced Plaintiff's time records for the relevant time period which evidence the precise amount of work performed.[82] In response thereto, Plaintiff articulated only her unsubstantiated belief that her time records contained "some inaccuracies."[83] Both parties produced consistent earnings statements and the hours worked match the time records.[84]

ERC utilized semi-monthly pay periods for all its employees throughout Plaintiff's employment.[85] As a discussed in Section II.B., above, it is not uncommon for a pay period to include two full workweeks and part of a third.[86] The resulting earning statement, reflecting more than 80 straight time hours without earning overtime, can lead to confusion regarding overtime among some employees. However, as shown in Section II.B, the semi-monthly pay period still allows for an employee's overtime hours to be correctly tracked and paid.[87] This fact is evidenced by ERC's Verified Summary of Plaintiff's Hours Worked and Wages Paid,

[81] As discussed above, Plaintiff has provided no evidence supporting her claim that she was improperly paid straight time for 121 hours of overtime worked. McCants Dep. 273:9-20 (Exh. 31), 275:14-277:24 (Exh. 32). As such, Defendant's discussion will focus solely on the extensive evidence produced regarding the precise amount of work performed by Plaintiff.
[82] McCants Dep. (Exh. 17).
[83] McCants Dep. 175:18-176:6 (Exh. 17).
[84] McCants Dep. (Exh. 16-17, 31-32).
[85] McCants Dep. 68:24-69:9, 152:19-25; *see also* Howell Aff. ¶ 8 (Exh. A), ¶ 11 (Exh. C).
[86] *See, e.g.,* McCants Dep. 171:3-172:22.
[87] *See* McCants Dep. (Exh. 16, 113-114; Exh. 17, 45-46); 29 C.F.R. 778.106.

wherein Plaintiff's time and payroll records indicate that she worked 128.01 hours of overtime and was paid $2,748.33 in overtime wages.[88]

ERC has satisfied its burden by providing evidence of the precise amount of work performed, and, therefore, summary judgment should be granted in its favor. *See Allen*, 495 F.3d at 1315-1316.

## IV. CONCLUSION

This Court should grant summary judgment in favor of the Defendant. Plaintiff has not satisfied her evidentiary burden with respect to her claim that she was paid straight time for overtime work. Alternatively, summary judgment should be granted because the incontrovertible evidence shows that Plaintiff was properly paid for all overtime hours worked.

Dated: October 3, 2017

Respectfully submitted,

**SMITH, GAMBRELL & RUSSELL, LLP**

By: /s/Yash B. Dave
Patricia J. Hill - Trial Counsel
Florida Bar No. 0091324
pjhill@sgrlaw.com
Yash B. Dave
Florida Bar No. 0068573
ydave@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Telephone: (904) 598-6100
Facsimile: (904) 598-6240

**Attorneys for Enhanced Recovery Company, LLC**

[88] *See* Dkt. No. 12; *see also* McCants Dep. (Exh. 16-17, 31-32).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of October, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served a true and correct copy of the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

Ms. Shermanita McCants
575 Oakleaf Plantation Parkway, #903
Orange Park, Florida 32065
shermanitamccants@yahoo.com
*Pro Se Plaintiff*

/s/Yash B. Dave
Attorney